CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 09 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIE GEAR, | ) | CASE NO. 7:14CV00586 |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| ARVIL GALLIHAR, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Willie Gear, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials placed him in stripped cell conditions and in segregated confinement without due process. Upon review of the record, the court finds that the action must be summarily dismissed.

## Background

Gear alleges the following sequence of events from which his claims arise. In June 2014, prison authorities transferred Gear from the Richmond City Jail to Red Onion State Prison. Gear was wearing only a T-shirt, jeans, and shower shoes. While Gear and ten other offenders were undergoing a strip search, an officer claimed to have stepped on something that made a crunching sound. The officer isolated Gear in another room, where officers questioned him about a plastic container they had. They asked Gear what it looked like, and he told them he did not know. Asked about his charge and sentence, Gear told them that he is serving a four-year sentence for a drug conviction. The officers threatened that the container would add another year to his sentence. Without first conducting a hearing, they then placed Gear in a "dry strip cell" until he defecated, but found nothing. The next day, officers asked more questions, and Gear continued to deny that he had brought any plastic container into the institution. Gear also passed a urine screen test and was never charged with any disciplinary infraction.

The next day, although Gear is a security Level II inmate, without conducting a hearing, officers placed him in the structured living pod with aggressive, high security Level VI inmates who verbally threatened him and caused him to fear for his life. Gear tried to file complaints, asking to be transferred away from these inmates, but officers would not give him grievance forms. Finally, a month later, after Gear called his mother, officials moved Gear to the general population and then transferred him to a lower security prison facility.

Gear sues several supervisory Red Onion officers for punishing him with strip cell conditions based on false accusations, without Miranda warnings, and without the procedural protections required under prison disciplinary regulations. He also complains that the wrongful punishment continued when officers housed him for weeks with Level VI security inmates. Gear seeks monetary damages for these alleged violations.

## Discussion

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988).

When a defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Thus, inmates have no constitutional right to be housed in any particular prison or in a prison with

2

less restrictive conditions. Olim v. Wakinekona, 461 U.S. 238, 245 (1983) (finding no liberty interest in avoiding interstate prison transfer); Meachum v. Fano, 427 U.S. 215, 224 (1976) (finding that inmates had no liberty interest in avoiding transfer from medium to maximum security prison or in being transferred only after proven, serious misconduct).

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.

Meachum, 427 U.S. at 224-25.

An inmate is entitled to federal due process protections, such as a hearing, only in relation to a form of confinement so restrictive that it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Mere changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston, 946 F.2d at 343; see also Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (holding that a six-month term in segregation, with no outside recreation or religious services, small food portions, and filthy cells, did not impose an atypical hardship and did not implicate any federally protected liberty interest).

Under these principles, Gear's allegations fail to state any constitutional claim actionable under § 1983. First, Gear has no independent constitutional right to be housed in a prison facility or housing unit of any particular security level. Second, Gear does not allege that any of the forms of confinement imposed atypical hardship on him so as to create a protected liberty interest under Sandin. Therefore, the defendants' placing Gear at Red Onion, moving him into a strip cell, and then placing him in a segregation housing area for several weeks did not give rise to any

3

constitutional claim actionable under § 1983. Therefore, Gear had no constitutional right to a hearing before these transfers. They were well within the discretion granted to prison officials in maintaining institutional security.

Third, to the extent that Gear complains about prison officials' failure to follow state classification or disciplinary procedures, such alleged violations of state law are not actionable under § 1983. See Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990). Thus, Gear had no constitutional right to avoid restrictive housing assignments except as punishment for a disciplinary infraction. To the extent that Gear may have some cause of action against state officials for violations of state law, the court declines to exercise supplemental jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c), and will dismiss them without prejudice.

## Conclusion

For the reasons stated, Gear's allegations fail to state any § 1983 claim upon which relief can be granted. Therefore, the court dismisses his action without prejudice under § 1915A(b)(1) and § 1367(c).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 9th day of February, 2015.

_____
Chief United States District Judge

4